UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
at LEXINGTON

CIVIL ACTION NO. 5:07-402-KKC

BENTON KEITH COVINGTON,                                              PLAINTIFF

v                                    **OPINION AND ORDER**

MICHAEL J. ASTRUE,
Commissioner of Social Security,                                     DEFENDANT

\* \* \* \* \* \* \* \*

This matter is before the Court on the Cross Motions for Summary Judgment filed by the

Plaintiff, Benton Keith Covington, and the Defendant Commissioner Astrue.  For the reasons

given below, the Plaintiff's Motion is **DENIED** and the Defendant's Motion is **GRANTED.**

I.      **Factual and Procedural Background**

On October 25, 2005, Plaintiff filed his application for a period of disability, disability

insurance benefits, and supplemental security income with the Social Security Administration.

ALJ's Opinion, at 1.  Plaintiff alleges disability due to residual pain and restriction following

back surgery at the L4-5 and L5-S1 levels of his lumbar spine, a disc herniation at the L4-5 level,

and arthritis in the spine.  Transcript, at 84 [hereinafter "Tr."]; Plaintiff's Motion for Summary

Judgment, at 2 [hereinafter "Plaintiff's Motion"].  Plaintiff requested a closed period of disability

from August 10, 2004 to February 2, 2006, or in the alternative, for all periods of time after

January 7, 2005.  ALJ's Opinion, at 1.  Plaintiff was forty-five years old on the disability onset

date.  He has only a limited education, since he has completed school through the tenth grade.  *Id.*

at 7.  He has past employment as a laborer, fork lift operator, furniture mover, dairy worker, and

a stable attendant.  Plaintiff's Motion, at 2.

Plaintiff claims that he has been unable to work since August 10, 2004, the date he underwent a microdiscectomy, due to back and leg pain secondary to a herniated disc.  ALJ's Opinion, at 5.  Plaintiff received this surgery after he reported a back injury earlier in 2004.  *Id.* Plaintiff was released to return to work on January 7, 2005, but on that date, he used a jackhammer at work and experienced numbness in his leg and sharp pain in his back.  *Id.*  He has not worked since that date.  *Id.*  Plaintiff claims that his pain occurs in his low back and extends to his left leg, and he describes it as an intensity of ten on a ten-point scale, though it decreases to about 8.5 with his pain medication.  Tr., at 92; ALJ's Opinion, at 5.  Though Plaintiff sometimes claims that nothing relieves his pain, he also admits that his pain medication relieves his pain for three to four hours at most.  Tr., at 92-93.  Plaintiff takes multiple types of medications for his pain; he states that this medication makes his sleepy and drowsy.  *Id.*  He also takes Tradazone for sleep and depression.  ALJ's Opinion, at 5.  Plaintiff claims his depression stems from his inability to work, but that the depression comes and goes.  *Id.*

Plaintiff lives in a trailer with his wife.  He states that he cannot do yard work, and can only do household chores for five to ten minutes at a time and requires rest in between.  Tr., at 94; ALJ's Opinion, at 5.  Though he has a driver's license, he is unable to drive for long periods of time, and he rarely leaves the house because he is afraid of falling.  Tr., at 84; ALJ's Opinion, at 5.  Plaintiff states that he passes the time by watching television and walking around the house, but he gave up hunting and fishing.  ALJ's Opinion, at 5.  Plaintiff states that he cannot bend down, that he can only stand for ten minutes at a time, that he can only sit for ten to fifteen minutes at a time, and that he can only lift and carry ten to fifteen pounds.  Tr., at 84.  Plaintiff

2

also claims that he can only walk one block, that he cannot sleep at night, and that he must lie down three to four hours per day to relieve his pain.  Tr., at 84; ALJ's Opinion, at 5.

Plaintiff was seen by Dr. Steve T. Vogelsang on January 22, 2004 and was diagnosed with mild radiculitis and degenerative joint disease of the lumbar spine.  Tr., at 146.  Dr. Vogelsang noted that Plaintiff's pain comes and goes, depending on the activity.  Tr., at 146. Plaintiff received an MRI at the Lexington Diagnostic Center on June 18, 2004.  The doctors noted diffuse lumbar spondylosis with bulging discs at multiple levels, persistent left paramedian disc herniation at the L5-S1 level without evidence of stenosis, and interval development of a left far lateral disc herniation at the L4-L5 level resulting in stenosis of the left lateral recess.  Tr., at 147.  On August 10, 2004, Plaintiff underwent a microdiscectomy at the L4-5 and L5-S1 levels of the back.  The operation was performed by Dr. James Bean at Central Baptist Hospital.  Tr., at 149-50.  Dr. Bean's treatment notes from this date indicated that Plaintiff had had the complained-of pain since at least 2001, but that it had worsened significantly in the three months prior to his surgery.  Tr., at 151.  Dr. Bean noted straight leg raising positive on the left at thirty degrees, as well as crossed straight leg raising positive referred from right to left.  Tr., at 151.

On March 3, 2005, two months after Plaintiff's jackhammer injury and his alleged disability onset date, Dr. Marc Ford examined Plaintiff.  His impressions were that findings were consistent with postoperative fibrosis on the left at L4-5 and L5-S1.  Tr., at 197.  Dr. Ford also noted that there was a minimal left lateral disc bulge at L4-5 but that there was no evidence of a disc fragment or recurrent disc herniation.  Tr., at 197.  Plaintiff was a patient at KORT Tates Creek Clinic from April 13, 2005 to May 9, 2005.  Tr., at 198-216.  At this time, Plaintiff described his pain as constant but varying, and that it was better in the afternoon.  Tr., at 210.  He

stated that he is limited to sitting for fifteen minutes, standing for ten minutes, and walking for thirty minutes at a time.  *Id.*  During his rehabilitation at KORT, it was noted that Plaintiff's pain levels fluctuated, but that his symptoms appeared to be not irritable with exercise.  Tr., at 199. Plaintiff's progress was described as "satisfactory" and "minor change," with a "fair" rehabilitation potential.  Tr., at 199-201.

Plaintiff was treated by Dr. Bean at Neurological Associates from July 29, 2004 to May 10, 2005.  Tr., at 217-35.  On August 31, 2004, shortly after his microdiscectomy operation, Plaintiff reported that he had been pain-free for two weeks, then developed some pain that was minimal compared to his pre-surgery pain.  Tr., at 230.  Dr. Bean recommended physical therapy and anticipated a return to work shortly.  *Id.*  Treatment notes after Plaintiff's jackhammer injury on January 7, 2005 reflect increased complaints of pain.  On January 13, 2005, Dr. Bean stated that Plaintiff's pain "worsened markedly" after the injury.  Tr., at 226.  On January 29, 2005, Dr. Bean stated that Plaintiff's pain was "severe and disabling."  Tr., at 225.  On March 3, 2005, Dr. Bean stated that a recent MRI showed a probable recurrent disc herniation at the L4-5 left far lateral, extraforaminal.  Dr. Bean stated that this involved both scar and apparently recurrent disc rupture.  Tr., at 221.

After a follow-up visit on April 11, 2005, Dr. Bean reported Plaintiff's claim that his leg pain had not reduced since March.  Dr. Bean changed Plaintiff's medication and referred him to physical therapy.  Tr., at 219.  On May 10, 2005, Dr. Bean reported that Plaintiff's physical therapy had resulted in only minimum improvement overall, though there had been some improvement in Plaintiff's flexion/extension.  Tr., at 217.  Dr. Bean opined that Plaintiff had a thirteen percent impairment.  *Id.*  In a May 19, 2005 request for information from Plaintiff's

4

attorney, Dr. Bean stated that Plaintiff had a thirteen percent whole body impairment, that he did not have the physical capacity to return to the type of work performed at the time of the jackhammer injury, that he is restricted to lifting twenty pounds, and that he can occasionally bend and twist. Tr., at 249. Finally, on February 2, 2006, Dr. Bean provided a physical capacity evaluation in which he opined that Plaintiff can sit, stand, and walk for eight hours in an eight-hour workday. Tr., at 248. Dr. Bean also stated that Plaintiff can continuously lift and carry up to ten pounds, frequently lift eleven to twenty pounds, and occasionally lift twenty-one to fifty pounds. Tr., at 248. Dr. Bean stated that Plaintiff can use both of his feet in repetitive movements in operating foot controls, can occasionally bend, squat, crawl, climb, and stoop, can frequently reach above shoulder level, and has no other activity restrictions. Tr., at 248. This reflected an assessment that Plaintiff can perform medium work. Plaintiff's Motion, at 2; ALJ's Opinion, at 6.

Plaintiff visited the Baptist Pain Clinic from August 28, 2006 to December 18, 2006, where he was treated by Dr. William E. Ackerman. Tr., at 261-68. On August 28, 2006, Dr. Ackerman opined that Plaintiff's pain is primarily of an inflammatory origin with some component of muscle spasms, and noted that Plaintiff's lumbar spine pain is probably related to a sprain or strain injury from the jackhammer incident. Dr. Ackerman also noted that Plaintiff displayed no signs of depression or anxiety. Tr., at 265-68. On September 25, 2006, Dr. Ackerman noted Plaintiff's statements that his medications are helping control his pain. Dr. Ackerman's impressions were that Plaintiff has mechanical back pain and postlaminectomy syndrome, though Plaintiff's gait and balance were normal. Tr., at 263-64. Strangely, Dr. Ackerman also noted both that Plaintiff is unable to work and that Plaintiff related that he is

5

working.  Tr., at 263.  On December 18, 2006, Dr. Ackerman noted Plaintiff's complaints of worse pain overall, swelling in his legs, and difficulty walking and sitting.  Tr., at 261.  Dr. Ackerman's impressions were S/P surgery which included a microdiscectomy and increased pain for Plaintiff's pathology.  Dr. Ackerman recommended that Plaintiff continue on his medication and pursue a walking or stationary bicycle program.  Tr., at 262.

Simplified Vocational Rationales completed by Alan Emberton and Mel Bailey stated that Plaintiff has the residual functional capacity [hereinafter "RFC"] to perform light work, that he cannot perform his past work, and that there are a significant number of jobs in the national economy available to Plaintiff.  Therefore, they concluded, Plaintiff is not disabled.  Tr., at 105, 123.  Physical RFC Assessments were completed in 2006 by two state agency medical consultants, Drs. Allen Dawson and Robert K. Brown.  Their assessments are virtually identical.  They found that Plaintiff is limited to lifting and carrying twenty pounds occasionally, ten pounds frequently, sitting, standing, and walking about six hours in an eight-hour workday, and that Plaintiff can frequently push or pull with the left leg.  Tr., at 237, 252.  The doctors found that Plaintiff can occasionally climb ramps or stairs, stoop, kneel, crouch, and crawl, can frequently balance, and can never climb ladders or ropes.  Tr., at 238, 253.  They found that Plaintiff has no manipulative limitations, and only has environmental restrictions regarding vibration.  Tr., at 239-40, 254-55.  Dr. Dawson only found Plaintiff's alleged limitations to be partially credible.  Tr., at 241.  Unlike Dr. Dawson, Dr. Brown also reviewed Dr. Bean's February 2, 2006 assessment and gave it little weight due to a lack of appropriate physical findings, and stated that the estimated thirteen percent impairment is a matter reserved for the Commissioner.  Tr., at 257.

On March 7, 2007, Plaintiff was examined by Dr. Byron T. Westerfield by request of the

6

Administrative Law Judge [hereinafter "ALJ"].  Dr. Westerfield noted Plaintiff's complaints of

back and leg pain, that he cannot stand for long periods of time, and that he must move around to

get comfortable.  He also noted that Plaintiff's medications "take the edge off of him to some

degree."  Tr., at 271.  Dr. Westerfield stated that Plaintiff walks with a normal gait, that straight

leg raise is positive on the left at forty-five degrees, that he has a normal range of motion in the

back and peripheral joints, and that a lumbar spine x-ray showed degenerative arthritic changes

with some narrowing at the L2-L3 disc space.  Tr., at 272-73.  Dr. Westerfield's impressions

were chronic back pain, a combination of degenerative arthritis and degenerative disc disease,

and obesity.  Tr., at 273.  Dr. Westerfield opined that Plaintiff appears to be impaired from

activities requiring significant bending, lifting, or carrying, but that he would be able to perform

sedentary activity with appropriate breaks.  Tr., at 273.  Dr. Westerfield provided a medical

source statement indicating that Plaintiff can occasionally lift and carry between eleven and

twenty pounds, and frequently lift up to ten pounds.  Tr., at 276.  Dr. Westerfield also opined that

Plaintiff can sit two hours at a time and a total of six hours in an eight-hour workday, and stand

and walk one hour at a time and two hours total, and that he can never use his left foot to operate

foot controls.  Tr., at 277-78.  Dr. Westerfield further noted that Plaintiff can never climb ladders

or scaffolds, stoop, kneel, crouch, or crawl, can occasionally balance and climb stairs or ramps,

has no environmental restrictions, and can perform numerous daily activities.  Tr., at 279-81.

    Plaintiff's disability application was denied initially and again on reconsideration.

Plaintiff then received a hearing before ALJ Gloria B. York on February 13, 2007, and on June

28, 2007, the ALJ issued an opinion denying Plaintiff's application.  The ALJ found that Plaintiff

has the severe impairments of chronic low back pain status post microdiscectomy and obesity.

ALJ's Opinion, at 4.  However, the ALJ also found that these impairments were not severe

enough to meet or medically equal the impairment listings in the social security regulations.  *Id.*

After considering both Dr. Bean and Dr. Westerfield's medical opinions, the ALJ accepted the

more restrictive assessment of Dr. Westerfield and found that Plaintiff retains the RFC to do only

a full range of sedentary work.  *Id.*  Since the ALJ found that the nonexertional limitations noted

by Dr. Westerfield would not preclude a wide range of sedentary work, she determined that a

finding of "not disabled" was directed by Medical-Vocational Rule 201.19.  *Id.* at 7.  The Social

Security Appeals Council denied review of this decision, thus making the decision final, and

Plaintiff then brought the present action before this Court to review the Commissioner's

decision.

## II.      Standard of Review

When reviewing decisions of the Social Security Agency, the Court is commanded to

uphold the Agency decision, "absent a determination that the Commissioner has failed to apply

the correct legal standards or has made findings of fact unsupported by substantial evidence in

the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (internal

quotation marks and citation omitted). Substantial evidence is defined as "more than a scintilla of

evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d

284, 285-86 (6th Cir. 1994). The Court is required to defer to the Agency's decision "even if

there is substantial evidence in the record that would have supported an opposite conclusion, so

long as substantial evidence supports the conclusion reached by the ALJ." *Jones v. Comm'r of

Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th

Cir. 1997)). Further, when reviewing the ALJ's decision, the Court cannot review the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 468 (6th Cir. 2006); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Where the Commissioner adopts the ALJ's opinion as its own opinion, the Court reviews the ALJ's opinion directly. *See Sharp v. Barnhart*, 152 Fed. Appx. 503, 506 (6th Cir. 2005).

## III.    Analysis

It is the responsibility of the Commissioner of Social Security, acting through the ALJ, to determine whether a social security disability claimant qualifies as legally disabled, and is thus deserving of disability insurance benefits and supplemental security income. *See* 20 C.F.R. § 404.1527(e)(1). To make this determination, the ALJ must perform a five-step analysis, as follows:

> First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (citing 20 C.F.R. §§ 404.1520, 404.920). An impairment or combination of impairments is considered "severe" if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20

C.F.R. § 404.1520(c). The social security disability claimant has the ultimate burden of establishing the existence of his or her disability. *Lancaster v. Comm'r of Soc. Sec.*, 228 Fed. Appx. 563, 571 (6ᵗʰ Cir. 2007). For the first four steps of the above sequential analysis, the burden of proof is on the claimant. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6ᵗʰ Cir. 2003) ("Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work.").

However, when the disability analysis proceeds to the fifth step, the burden of proof shifts to the Commissioner to prove that there is work available in the national economy that the claimant can perform. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 836 (6ᵗʰ Cir. 2006); *Hephner v. Matthews*, 574 F.2d 359, 362 (6ᵗʰ Cir. 1978). The government meets its burden on this fifth step of the disability analysis by providing proof of specific jobs that the claimant can perform despite his physical or mental impairments. Moreover, merely finding that the claimant has the general capacity to perform a broad category of work, such as "light work" or "sedentary work," is not sufficient proof for this fifth step. Rather, the claimant's ability to perform various types of work must be evaluated in light of several factors, such as his age, education, work experience, and impairments, including his pain. *See Allison v. Comm'r of Soc. Sec.*, 1997 U.S. App. LEXIS 4483, at *9 (6ᵗʰ Cir. Mar. 6, 1997); *see also Kirk v. Sec. of Heath & Human Servs.*, 667 F.2d 524, 530 (6ᵗʰ Cir. 1981) (quoting *Hephner*, 574 F.2d at 362-63).

Generally, there are two methods by which the government can provide sufficient proof of specific jobs in the national economy that a social security claimant has the capacity to perform. The first method is the utilization of a vocational expert's testimony at the

10

administrative hearing.  *See, e.g., Bass v. McMahon*, 499 F.3d 506, 508 (6th Cir. 2007); *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 874 (6th Cir. 2007); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).  The second method is the application of the Medical-Vocational Guidelines in 20 C.F.R. Part 404, Subpart P, Appendix 2 of the social security regulations.  *See* 20 C.F.R. pt. 404, subpt. P, app. 2; *see also Anthony v. Astrue*, 2008 U.S. App. LEXIS 4403, at *23 (6th Cir. Feb. 22, 2008) ("To carry this burden [step five of the disability analysis], the Commissioner may rely on either the testimony of a VE who evaluates a claimant's ability to perform work in light of the claimant's limitations or the SSA's medical-vocational guidelines.").

In this case, the ALJ specifically determined that Rule 201.19 of the Medical-Vocational Guidelines directed a finding that Plaintiff is not disabled under the social security regulations.  ALJ's Opinion, at 7.  Plaintiff argues that it was erroneous for the ALJ to make this non-disability finding pursuant to the Medical-Vocational Guidelines, and that because of this, the ALJ's decision is procedurally improper and not supported by substantial evidence.  The Court does not agree with Plaintiff.

## A.    Use of the Medical Vocational Guidelines

The Social Security Medical-Vocational Guidelines, otherwise known as "the Grids," represent a series of administrative findings on whether significant numbers of jobs exist in the national economy for claimants having various combinations of the age, education, work experience, and RFC factors discussed above.  *See* 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(a)-(b).  If the claimant's individual vocational profile is located in the appendix listings, a conclusion of "disabled" or "not disabled" is then directed without further analysis.  *Id.* § 200.00(d).

11

The social security regulations caution that the Grids are predicated on an individual claimant having only "exertional" impairments, meaning those that hinder an individual from meeting the strength requirements of the social security regulations. *Id.* § 200.00(e). "Nonexertional" impairments are those that result in certain mental, sensory, or skin impairments, or in postural limitations, manipulative limitations, or environmental restrictions. *Id.* Where a claimant has solely nonexertional impairments, the Grids cannot direct a conclusion about the claimant's disability. *Id.* § 200.00(e)(1). Similarly, where the claimant has both exertional and nonexertional impairments, the Grids are first consulted to determine whether a finding of "disabled" can be directed based on the exertional impairments alone. *Id.* § 200.00(e)(2). If not, the Grids cannot be used to direct a conclusion that the claimant is not disabled, and may be used only as a "framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations." *Id.*; *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990) (explaining that the Grids "may not be used to 'preclude' a finding of disabled where a significant nonexertional impairment exists.").

In determining Plaintiff's RFC, the ALJ expressly relied on Dr. Westerfield's opinion that Plaintiff can return to at least sedentary work. ALJ's Opinion, at 6. Accordingly, the ALJ found that Plaintiff "is limited to a full range of sedentary work." *Id.* However, Dr. Westerfield also assessed a number of nonexertional limitations, namely, Plaintiff's need for breaks between long periods of sitting or standing, his inability to operate foot controls with his left foot, and his restriction to no more than occasional climbing of ramps or stairs. Tr., at 271-81. Regarding these impairments, the ALJ stated that "[t]he nonexertional limitations noted by Dr. Westerfield .

12

. . would not preclude the performance of a wide range of sedentary work."  ALJ's Opinion, at 6.

The ALJ then concluded that "[b]ased on a residual functional capacity for a full range of

sedentary work and considering the claimant's age, education, and work experience, a finding of

'not disabled' is directed by Medical-Vocational Rule 201.19."  *Id.* at 7.  The ALJ thus applied

the Grids despite Dr. Westerfield's assessment that Plaintiff also has nonexertional impairments.

Plaintiff argues that by dismissing the nonexertional impairments, the ALJ selectively included

only the medical evidence against Plaintiff's case, and that the assessed nonexertional

impairments preclude using the Grids to direct a finding of "not disabled."  Instead, Plaintiff

says, the matter must be remanded so the ALJ can utilize a vocational expert to determine

whether there are a significant number of jobs that Plaintiff can still perform, and thus, whether

he is disabled.

The mere fact that a claimant is assessed with nonexertional impairments, however, does

not automatically foreclose the use of the Grids to direct a finding of "not disabled."  Rather, "it

is *only* when 'the nonexertional limitation restricts a claimant's performance of a full range of

work at the appropriate residual functional capacity level that nonexertional limitations must be

taken into account and a nonguideline determination made."  *Kimbrough v. Sec'y of Health &*

*Human Servs.*, 801 F.2d 794, 796 (6th Cir. 1986) (quoting *Kirk v. Sec'y of Health & Human*

*Servs.*, 667 F.2d 524, 528 (6th Cir. 1981)).  In other words, "the mere possibility of a

nonexertional impairment is insufficient.  Not even a minor nonexertional limitation is enough;

the claimant must show an impairment that significantly limits his ability to do a full range of

work at a designated level."  *Id.*  This showing is made where the ALJ finds that the claimant

suffers from a "severe" nonexertional impairment, or where the ALJ finds that the nonexertional

13

impairment significantly limits the claimant's ability to do a full range of work at the designated level. *See, e.g.*, *Adkins v. Comm'r of Soc. Sec.*, 251 Fed. Appx. 346, 350 (6th Cir. 2007) (ALJ specifically finds that claimant had severe mental nonexertional impairment, this precluded use of the Grids to direct disability conclusion); *Abbott*, 905 F.2d 918 (Appeals Council finds that claimant has severe mental impairment, but that it does not impose significant nonexertional limitations on his ability to work, cannot use the Grids here to direct disability conclusion).

The case of *Kimbrough v. Secretary of Health & Human Services*, one very similar to the present case, is instructive. In *Kimbrough*, the ALJ found that the claimant had a severe musculoskeletal impairment, but that it was not of listing-level severity. *Kimbrough*, 801 F.2d at 796. The ALJ found that the claimant retained the RFC to perform a full range of sedentary work, despite other medical opinions stating that he could perform light or medium work. *Id.* However, the ALJ did not find that the claimant's nonexertional impairment, his alleged pain, was severe; he also did not find that the nonexertional impairment significantly limited the claimant's ability to perform the full range of sedentary work. *Id.* at 796-97. As such, the only issue was whether the ALJ's finding that the nonexertional impairment was not severe, and that it did not significantly limit the claimant's ability to perform the full range of sedentary work, was supported by substantial evidence. *Id.* at 797 ("Thus, the issue . . . is not merely whether Kimbrough has a nonexertional impairment, but whether there was sufficient evidence to support the ALJ's finding that there was no *significant* nonexertional impairment, i.e., one that would prevent Kimbrough from performing a full range of sedentary work."). Upon review of the record evidence, the Sixth Circuit Court of Appeals held that substantial evidence supported the ALJ's implicit finding that the nonexertional impairment was neither severe nor significantly

14

limiting.[1]  *Id.*

In the present case, as in *Kimbrough*, Plaintiff argues that the nonexertional impairments Dr. Westerfield assessed precluded the ALJ's use of the grids to direct a conclusion of "non disability."  As in *Kimbrough*, these nonexertional impairments, that Plaintiff requires breaks between sitting and standing periods, his inability to operate foot controls with his left foot, and his restriction to no more than occasional climbing of ramps or stairs, were not found "severe."  ALJ's Opinion, at 4.  Finally, the ALJ also explicitly found that the nonexertional impairments "would not preclude the performance of a wide range of sedentary work," an even clearer finding than in *Kimbrough*, where the ALJ only implicitly reached this conclusion.  *Id.* at 6.  Therefore, as in *Kimbrough*, the only remaining issue is whether these findings regarding Plaintiff's nonexertional impairments are supported by substantial evidence.  If so, the ALJ properly used the Grids to direct a "non disability" conclusion; if not, the case must be remanded to utilize a vocational expert's assistance.  *See Adkins*, 251 Fed. Appx. at 350-51; *Hicks v. Comm'r of Soc. Sec.*, 105 Fed. Appx. 757, 764-65 (6th Cir. 2004) (ALJ finds that nonexertional limitations do not significantly reduce the range of work plaintiff can perform; Court reverses because this was not supported by the evidence relied upon).  Thus, the Court will now examine the record to determine if the ALJ's conclusions about Plaintiff's nonexertional impairments are supported by substantial evidence.

---

[1]  The Court explained that, "[a]lthough the ALJ did not specifically state that Kimbrough's nonexertional impairment was not severe enough to prevent him from performing a full range of sedentary work, that is the clear indication from his combined findings."  *Kimbrough*, 801 F.2d at 796.  This implicit finding was upheld by the Court, as it was supported by substantial evidence despite not being explicitly stated by the ALJ.  *Id.* at 797.

15

**B.** **Substantial Evidence Supports the ALJ's Conclusions that Plaintiff's Nonexertional Impairments are Neither "Severe" nor "Significantly Limiting"**

Upon review of the administrative record, the Court holds that substantial evidence supports the ALJ's findings that the nonexertional limitations assessed by Dr. Westerfield are neither "severe" nor "significantly limiting."  Two months after Plaintiff's jackhammer injury and alleged disability onset date, Dr. Ford examined Plaintiff and found no evidence of disc fragment or recurrent disc herniation.  Tr., at 197.  During Plaintiff's period of rehabilitation at KORT, his progress was described in such positive terms as "satisfactory" and having a "fair" rehabilitation potential, though "minor change" was also noted.  Tr., at 199-201.  Dr. Bean, Plaintiff's treating physician, stated in May 2005 that although Plaintiff's physical therapy had only resulted in minor improvement overall, there had been an improvement in Plaintiff's flexion/extension.  Tr., at 217.  In 2006, Dr. Ackerman reported Plaintiff's complaints of pain, but also noted that Plaintiff's gait and balance were normal.  Tr., at 263-64.  Although an x-ray revealed degenerative arthritic changes with some narrowing at the L2-L3 disc space, Dr. Westerfield also noted that Plaintiff walks with a normal gait and that he has a normal range of motion in the back and peripheral joints.  Tr., at 272-73.  These medical findings all provide evidence to support the ALJ's determinations.

Further, the record contains several physical capacity assessments that are contrary to Dr. Westerfield's nonexertional impairment limitations.  Though Dr. Westerfield, an examining physician, stated that Plaintiff can perform sedentary work, Dr. Bean, the treating physician, stated that Plaintiff can return even to medium work, rather than just sedentary work.  Though Dr. Bean stated that Plaintiff's symptoms were "severe and disabling" just a few weeks after the jackhammer injury, Dr. Bean also opined that Plaintiff only suffered from a thirteen percent

16

impairment as of May 2005.[2]  Tr., at 217, 225.  In direct contrast to Dr. Westerfield's assessment, Dr. Bean did not find that Plaintiff had any limitation in either of his feet for repetitive movements in using foot controls.  Tr., at 248.  Whereas Dr. Westerfield stated that Plaintiff can never climb ladders or scaffolds, stoop, kneel, crouch, or crawl, Dr. Bean instead stated that Plaintiff can occasionally climb, stoop, bend, and crawl.  Tr., at 248, 279-81.

In addition, Dr. Westerfield opined that Plaintiff can only sit two hours at a time and a total of eight hours in a workday, and that he can only stand and walk one hour at a time and two hours in a workday.  Tr., at 277-78.  Dr. Bean, however, opined that Plaintiff can stand, sit, and walk the full eight hours of a workday, and did not mention any need for breaks between periods of walking or sitting in his February 2006 assessment.  Tr., at 248.  Moreover, the state agency medical consultants determined that Plaintiff can sit, stand, and walk six hours in an eight-hour workday, and did not elaborate on any additional need for extended breaks between walking and sitting periods.  Tr., at 237, 252.  The medical consultants also opined that Plaintiff can frequently push and pull with his left leg, and that he can occasionally climb, stoop, kneel, crouch, and crawl.  Tr., at 238, 253.  These competing assessments undermine the supposed severity or significance of the nonexertional impairments noted in Dr. Westerfield's opinion and provide further evidence in support of the ALJ's conclusions.

The ALJ found that Plaintiff's impairments can reasonably be expected to produce his alleged symptoms.  ALJ's Opinion, at 6.  However, the ALJ then determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not

---

[2]  It should also be noted that these particular conclusions are issues reserved to the Commissioner of Social Security.  *See* 20 C.F.R. § 404.1527(e)(1).  Statements from Dr. Bean or other physicians/examiners that Plaintiff is or is not disabled are not dispositive of the case.  *Id.*

17

credible to the extent he is precluded from performing a full range of sedentary work.[3]  Tr., at 6.

This credibility determination is borne out by the record, and further supports the ALJ's

conclusions about the nonexertional impairments.  Despite Plaintiff's many complaints of

uncontrollable pain, it appears that Plaintiff's medications were effective in lessening it

significantly.  Although Plaintiff has stated that nothing relieves his pain, this is undercut by the

record evidence.  At one time, Plaintiff stated that his pain decreases from a ten to an 8.5 on a

ten-point scale when he uses his pain medication.  Tr., at 92; ALJ's Opinion, at 5.  Plaintiff has

admitted that his medication relieves his pain for up to three or four hours.  Tr., at 92-93.  In

2004, Dr. Vogelsang noted that Plaintiff's pain comes and goes, depending on the activity in

which Plaintiff is participating.  Tr., at 146.  In 2005, although Plaintiff stated that his pain is

constant, he said it varies and is better in the afternoon.  Tr., at 210.  In 2006, Dr. Ackerman

noted that Plaintiff's medications were helping to control his pain.  Tr., at 263.  One of the state

agency medical examiners also stated that he found Plaintiff's alleged limitations to be only

partially credible.  Tr., at 241.

While Plaintiff was undergoing physical therapy, it was noted that although Plaintiff's

pain levels fluctuated, his symptoms appeared to be not irritable with exercise.  Tr., at 199.  Dr.

Ackerman only recommended that Plaintiff remain on his current medication and that he pursue

a walking or stationary bike program.  Tr., at 262.  Dr. Westerfield noted that Plaintiff's pain

medications "take the edge off of him to some degree."  Tr., at 271.  Also, the record does not

indicate that Plaintiff underwent any kind of advanced procedures since his disability onset date

---

[3]  The ALJ thus followed the two-step process for making credibility determinations laid out by the Sixth
Circuit Court of Appeals in *Bogle v. Sullivan*.  *See Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993).

18

in January 2005.  Instead, Plaintiff's doctors all recommended medication, physical therapy, and exercise programs.  Further, Plaintiff claims that he is essentially unable to do any kind of activities at all, other than watch television and sometimes walk a single block.  Tr., at 84, 94; ALJ's Opinion, at 5.  Dr. Westerfield, however, opined that Plaintiff has no limitations in performing a variety of activities, including shopping, using public transportation, and preparing simple meals.  Tr., at 281.  Likewise, Dr. Bean did not indicate any kinds of daily activities that Plaintiff is unable to do, other than the exertional and nonexertional limitations previously discussed.  Tr., at 248.

Substantial evidence supports the ALJ's conclusions that the nonexertional impairments assessed by Dr. Westerfield were not severe and that they do not significantly limit Plaintiff's ability to perform the full range of sedentary work.  It should be remembered that substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip*, 25 F.3d at 285-86.  If substantial evidence supports the ALJ's decision, it must be upheld, even if another conclusion could reasonably have been drawn from the record.  *Jones*, 336 F.3d at 475.  The ALJ's decision to discount the assessed nonexertional limitations is therefore not the "selective inclusion" of only those portions of the evidence that support the ALJ's decision; rather, it is the acceptance of only those portions of Dr. Westerfield's opinion that are supported by the record evidence.  Since this decision is supported by substantial evidence, the ALJ properly applied the Medical-Vocational Guidelines to find that Plaintiff is not considered disabled under the Social Security Act.

**WHEREFORE,** For the reasons stated above:

1.      Plaintiff's Motion for Summary Judgment is **DENIED**; and

2.      Defendant's Motion for Summary Judgment is **GRANTED**.

Dated this 18th day of April, 2008.

**Signed By:**

**_Karen K. Caldwell_**

**United States District Judge**